**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Shawn Christopher Lyte,<br><br>　　　　　Defendant. | No. CR-20-01859-001-TUC-JGZ (JR)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER** |

A grand jury charged Defendant Shawn Christopher Lyte with failing to register as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA). The Indictment alleged:

> Beginning on or about May 26, 2020 until on or about June 8, 2020, in the District of Arizona, the defendant, SHAWN CHRISTOPHER LYTE, a person required to register under the Sex Offender Registration and Notification Act, did knowingly fail to register and update a registration as required by the Sex Offender Registration and Notification Act, after relocating and traveling in interstate commerce from Michigan to Arizona. All in violation of Title 18, United States Code, Section 2250(a).

(Doc. 18.) On June 17, 2021, Defendant waived his right to a jury trial. (Doc. 66). A trial before the Court was held on July 27 and 28, 2021.

Having considered the testimony at trial, weighed the credibility of the witnesses, and examined the documentary evidence, the Court finds the Defendant guilty of the sole count in the Indictment. The Court makes the following findings of fact and law in support of its verdict.

## I. Law

SORNA's registration provision, 34 U.S.C. § 20913(a), requires a convicted sex offender to "register, and keep the registration current, in each jurisdiction[1] where the offender resides, where the offender is an employee,[2] and where the offender is a student." Under section 20913(c): "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." *Id*. § 20913(c). The knowing failure to register or update a registration as required by SORNA is punishable by a term of imprisonment of up to ten years. 18 U.S.C. § 2250(a).

To prove a defendant guilty of failing to register as a sex offender under section 2250(a), the government must prove that the defendant: (1) is required to register under SORNA, (2) traveled in interstate or foreign commerce as alleged in the indictment, and (3) knowingly failed to register or update a registration as required by SORNA. 18 U.S.C. § 2250(a). As to the third element, an act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident. *United States v. Liu*, 731 F.3d 982, 994-95 (9th Cir. 2013); Ninth Cir. Model Crim. Jury Instr. 5.7. The trier of fact "may consider evidence of the [d]efendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly." *Liu*, 731 F.3d at 995; Ninth Cir. Model Crim. Jury Instr. 5.7. The Government can establish that a defendant "knowingly failed to register or update a registration" by showing that the defendant knew of a registration requirement and that he knowingly failed to register or update a registration. *United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012); *United States v. Crowder*, 656 F.3d 870, 876-877 (9th Cir. 2011).

---

[1] SORNA's definition of "jurisdiction" includes a state. 34 U.S.C § 20911(10)(A). The term "sex offender registry" means a registry of sex offenders, and a notification program, maintained by a jurisdiction. *Id*. § 20911(9).

[2] SORNA's definition of the term "employee" includes an individual who is self-employed or works for any other entity, whether compensated or not. *Id*. § 20911(12).

- 2 -

## II. Evidence at Trial

The parties stipulated to nineteen facts and to the admission of exhibits 1-7. (Doc. 78.) The parties presented the witness testimony of Deputy Audra Bidegain, United States Marshals Service; Special Agent Winward Griffin, HSI; Lana Hadzajlic-King, an employee of the Michigan State Police; and Aimee Jacobson-Mielnicki, a fingerprint technician with the Pima County Sheriff's Department in Tucson, Arizona. Other evidence included the audio recording of Lyte's June 8, 2020 interview with Deputy Bidegain, and a log showing texts that were extracted from phones in Lyte's possession at the time of his arrest.

The stipulated facts establish elements one and two of the offense–that Defendant was a sex offender who was required to register under SORNA and that Defendant traveled in interstate commerce from Michigan to Arizona in May 2020. (*Id.*) The Court concludes that the Government has also proven beyond a reasonable doubt the third element–that Defendant knowingly failed to register or update a registration as required by SORNA.

## III. Findings of Fact

From the evidence, the Court makes the following factual findings and conclusions of law.

1. Defendant Shawn Christopher Lyte is a sex offender for purposes of the SORNA.[3] (Doc. 78, ¶ 3.) On April 13, 2016, Lyte, was convicted in Broward County, Florida, of five counts of Possess Photograph, Film Or Other Representation That Knowingly Includes Sexual Conduct By Child in violation of F.S. 827.071(5), and one count of Using A Computer System Or Network To Solicit Or Obtain Sex With A Minor in violation of F.S.

---

[3] SORNA defines the term "sex offender" to mean an individual who was convicted of a sex offense. 34 U.S.C. § 20911(1). The term "sex offense" includes a criminal offense that is specified against a minor. *Id.* § 20911(5)(ii). The term "specified against a minor" includes an offense against a minor that involves any of the following: an offense (unless committed by a parent or guardian) involving kidnapping or false imprisonment; solicitation to engage in sexual conduct; use in a sexual performance; solicitation to practice prostitution; video voyeurism; possession, production, or distribution of child pornography; criminal sexual conduct involving a minor, or the use the use of the Internet to facilitate or attempt such conduct; or any conduct that by its nature is a sex offense against a minor. *Id.* § 20911(7)(A)-(I). "'[M]inor' means an individual who has not attained the age of 18 years." *Id.* § 20911(14).

847.0135(2), in case number 1416443. He was sentenced to five years in custody. (*Id.* ¶ 1; Ex. 1.)  Because of his Florida convictions, Lyte was required to register under SORNA. (Doc. 78, ¶ 4.)

2.  Lyte knew he was required to register as a sex offender.  On April 26, 2016, he reviewed and signed Florida's "Notice of Responsibilities as Required by Statute For Offenders Under the Care, Custody, or Control of the Department." (*Id.* ¶ 2; Ex. 2.)  Prior to his release from imprisonment, Lyte registered as a sex offender in the state of Florida. ( Doc. 78, ¶ 5.)

3.  In March 2019, Lyte notified Florida that he was moving to Texas, and he provided an address of 2407 North Main Street, Houston, Texas.  (*Id.* ¶ 5.)

4.  In a September 2019 passport application, Lyte listed his mailing address as 4911 King Richard's Row, Midland, Texas.  (*Id.* ¶ 6.)  Lyte did not provide that address on any sex offender registration in any state.

5.  Lyte has never registered as a sex offender in Texas.  (*Id.* ¶ 18.)

6. On December 29, 2019, Lyte was interviewed by Customs and Border Protection (CBP) after being refused entrance into Senegal, West Africa, and returned to JFK airport. (*Id.* ¶ 7.)

7.  On January 13, 2020, Lyte registered as a sex offender, in person, in the state of Michigan.  (*Id.* ¶ 8.)  He listed the address of his residence as 3391 3 Mile Rd NW, Grand Rapids, MI 49534.  (Ex. 3.)  There is no residence or living quarters at the 3 Mile Road NW address.  (Doc. 78, ¶ 9.)

8.  When he was arrested on June 8, 2020, Lyte told Deputy Bidegain that he had been in Texas looking for oil work when he was hired by EDR Pro Installers. (Ex. 10B.) EDR has a business address of 3391 3 Mile Rd NW, Grand Rapids, MI 49534. (Doc. 78, ¶ 9.)

9. Lyte is required to travel as part of his employment. (*Id.* ¶ 10.)  Lyte told Deputy Bidegain that he has been on the road with EDR since he was hired, except for a couple of months when he was away from the job, "just bouncing around parts of Texas, Oklahoma

1 . . . looking for other work." (Ex. 10B.)  He described working with EDR as "liv[ing] on the road 24/7." (*Id*.)

3    10.  On February 10, 2020, Lyte called Ms. Hadzajlic-King at the Michigan State Police Department's sex offender registry unit, inquiring about whether he had to return to Michigan in person in February for his biannual check-in because he was travelling for work.  Ms. Hadzajlic-King made sure that Lyte understood what his requirements were in Michigan as far as reporting any travel.  She told him that Michigan law required him to report any changes to his residential or work address, in person, to the local enforcement agent with jurisdiction over his residential address, within three business days after the change occurs.  Ms. Hadzajlic-King testified that sex offenders are required to report their travel and change in work both in Michigan and in the state that they are traveling to if they are out of state more than seven days.  (Testimony of Hadzajlic-King.)

13    11.  Lyte signed the Explanation of Duties to Register as a Sex Offender, in Michigan, on January 13, 2020.  According to the Explanation of Duties, Lyte was notified that if he did not have a residential address, he was required to provide the location that he uses in lieu of a residence, and if he was homeless, he was required to provide the name of the village, city, or township where he expected to spend the majority of his time.  The Explanation of Duties further notified Lyte that he was required to provide the name and address of any temporary lodging used or to be used when away from his residence for more than seven days.  (Ex. 3, p. 3.)

21    12.  The Explanation of Duties also notified Lyte that he was required to report in person within three business days:

>    a. My new address after changing or vacating my residence within the state of Michigan.  If I am homeless or lack a fixed or temporary residence, I am required by law to provide the village, city or township where I spend the majority of my time.
>    . . .
>    e. My temporary address and dates of travel if I intend to temporarily reside at any place other than my residence for more than seven days.

(*Id*.)

13. Lyte was in North Carolina when he called Hadzajlic-King on February 10, 2020. According to his employer's time records, Lyte was in Four Oaks, North Carolina from January 15, 2020 until March 25, 2020. (Doc. 78, ¶ 11.) He later traveled to Fort Worth, Texas on April 10, 2020, arriving April 11, 2020, and remained in Fort Worth Texas through April 21, 2020. (*Id.* ¶ 13.) He traveled from Fort Worth, Texas to San Francisco, California, where he stayed from April 22, 2020 through April 28, 2020. (*Id.* ¶¶ 15-16.) Lyte then traveled to Arizona and rented a hotel room at the La Quinta hotel-Reid Park in Tucson, Arizona, from May 17-19, 2020 and May 26-June 9, 2020. (*Id.* ¶ 17; Ex. 5.) Lyte was arrested in Arizona on June 8, 2020, a day before his scheduled departure.

14. Lyte did not register as a sex offender in North Carolina, Texas, California, or Arizona. (Doc. 78, ¶ 18.)

15. Lyte did not notify Michigan of his travel to North Carolina, Texas, California, or Arizona. (*Id.* ¶¶ 12, 14, 18.)

16. On June 8, 2020, Lyte was arrested by United States Marshals in Tucson at the La Quinta Inn. His cell phones were seized and searched pursuant to a federal search warrant. Information found on the phones included a January 3, 2020, text to "Jeremy," in which Lyte wrote: "In order to go back to the job, I have to become a MI resident. Meaning I have to register in MI too. Don't want to have to keep registering everywhere. Especially for sh*t I did not do in the first place. But who cares about truth, facts, and justice, huh?" (Ex. 9C.) Agents also found a May 29, 2020, text Lyte sent to his friend Tina Jones, telling her she could contact him using that particular phone, because "[t]he other [phone] will mainly be for work and judicial compliance." (Ex. 8; *see also* Bidegain testimony.) The phone Lyte was referring to in the text to Tina was not registered with the Michigan State police, as required by Michigan law, and it was not registered in any other location. (Bidegain testimony.)

17. Evidence established that Lyte received a text from Tina on June 8, 2020, asking him to call "when you have some private time, ASAP." (*Id.*) Lyte spoke with Tina thirty minutes later, and she told him that deputy United States Marshals were looking for him.

(*Id.*; Exs. 9A & 10B.) After that phone call, Lyte used his phone to search the internet for Arizona registry requirements, and soon thereafter, went to the Pima County Sheriff's Department to attempt to register. (Ex. 9B; Bidegain testimony.)

18. In a post-arrest statement, Lyte admitted that he went to the Pima County Sheriff's Office on June 8, around 2:50 p.m., to attempt to register, because he had received a phone call from his friend Tina in Texas. He also admitted that he needed to register in the state where he was working, that his Michigan registration lists a business address as his residential address, that he had not registered anywhere but Michigan and Florida, and that he "lost track of time" in Tucson. (Ex. 10B.)

19. Ms. Jacobson-Mielnicki of the Pima County Sheriff's Department testified that she would have registered Lyte, in Tucson, Arizona, on the sex offender registry, if he had requested to be registered. She did not register him on June 8, based on the information that he provided to her. (Jacobson-Mielnicki testimony.)

**IV.   Legal Conclusions**

20. As to the third element, the Government presented abundant evidence that Lyte was aware that he was a convicted Sex Offender who was required to register because of his conviction. Among other things, this included evidence that: Lyte reviewed and signed Florida's "Notice of Responsibilities as Required by Statute For Offenders Under the Care, Custody, or Control of the Department" on April 26, 2016 (Doc. 78, ¶ 2; Ex. 2); Lyte registered as a sex offender in the state of Florida prior to his release from custody (*id.* ¶ 5); Lyte complied or partially complied with registration requirements in Florida and Michigan (*Id.* ¶¶ 5, 8); Lyte reviewed and signed Michigan's Explanation of Duties to Register as a Sex Offender on January 13, 2020 (Ex. 3, pp. 2-4); Lyte's February 10, 2020, telephone conversation with Hadzajlic-King at the Michigan State sex offender registry unit, in which she informed him of his obligation to report changes to his residential or work address (Hadzajlic-King testimony); Lyte's belated attempt to register at the Pima County Sheriff's Department on June 8, 2020; and Lyte's own admissions to Deputy Bidegain (Ex. 10B).

21. The Government also presented substantial evidence that Lyte, despite knowing of his obligation to register, chose not to do so. This included evidence found on the two cell phones in Lyte's possession on the date of his arrest: the January 3, 2020, text to Jeremy, indicating he did not want to have to keep registering everywhere; and Lyte's May 29, 2020 text to Tina Jones, telling her she could contact him through a phone that was not registered or known to law enforcement. It also included the evidence that Lyte made no effort to register in Arizona until he heard from Tina, on June 8, that the United States Marshals were looking for him. By that time, more than three business days had elapsed since Lyte had resided in Arizona. In addition, Lyte's knowing failure to register was evidenced by his noncompliance with registration requirements, federal and state, when he traveled to and resided in Michigan, North Carolina, Texas, and California in 2020.

22. SORNA defines "resides" to mean, with respect to an individual, the location of the individual's home or other place where the individual habitually lives. 34 U.S.C. § 20911(13). In 2020, Lyte never registered the location of his residence in any registry. Although he registered in Michigan in January 2020, he never provided a residential address to the state; instead, he listed his employer's business address.

23. The Court concludes that in 2020, Lyte was homeless and transient due to his employment. He habitually lived in the states where he was sent to work. In May and June of 2020, Lyte was working in and intended to live in Arizona, until his next work assignment. Therefore, under 34 U.S.C. § 20913, Lyte was required to register in Arizona within three business days of his arrival. Lyte was in Arizona from May 17 to May 19, and again from May 26 to June 8. He failed to register, or attempt to register, within the three-day period.

24. The lack of a permanent residence does not relieve a sex offender of his registration obligations under SORNA. *See United States v. Thompson*, 811 F.3d 717, 725 (5th Cir. 2016). A transient sex offender can habitually live "in any place in which he intends to live with some regularity, . . . even if the person has no home or fixed address or is homeless." *United States v. Adams*, 888 F.3d 1134, 1137 (10th Cir. 2018) (quoting jury

instruction approved in *United States v. Alexander*, 817 F.3d 1205 (10th Cir. 2016)); *see also Thompson*, 811 F.3d at 725 (rejecting argument that an itinerant sex offender need not update his registration if he travels for an extended period of time without establishing a new place to habitually live); Office of the Attorney General, The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030–01, 38062 (2008) (SMART Guidelines) (a sex offender who enters a jurisdiction in order to habitually live in the jurisdiction must be required to register within three business days as just an offender who changes his place of residence within a jurisdiction). As the *Thompson* court concluded: "the fact that Thompson stayed in hotels and parks instead of establishing a single permanent residence in McKinney[, Texas] does not relieve him of his registration obligations under SORNA." 811 F.3d at 725.

25. The Court further concludes that various constitutional defenses raised by Lyte are without merit.

26. Lyte argues that his prosecution violates the Due Process Clause, the Tenth Amendment, and his fundamental right to travel. In closing argument, Lyte asserted that he should not be held liable for violating the federal registration requirements because the federal registration system is incomplete, inefficient and a mess, and to find a person guilty under these conditions is wrong. He argued that the registration requirements are too onerous, and he lacked fair notice of the three-day time period, as he was told by state agencies that he had ten days to register. He also argued that SORNA is an unfunded mandate that is burdensome to the states and which burdens his right to travel.

**Due Process Claim**

27. The Court rejects Defendant's argument that he lacked fair notice of SORNA's 3-day notice requirement. The Government was not required to prove that Defendant had actual notice of SORNA's 3-day requirement. "Due process traditionally requires that criminal laws provide prior notice both of the conduct to be prohibited and of the sanction to be imposed." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 836 (1994). "A criminal statute violates the 'fair notice' requirement if it 'fails to give a person

of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.'" *Knox v. Brnovich*, 907 F.3d 1167, 1182 (9th Cir. 2018) (quoting *Colautti v. Franklin*, 439 U.S. 379, 390 (1979), *overruled on other grounds by Webster v. Reproductive Health Servs.*, 492 U.. 490 (1989)). "The general rule that ignorance of the law or a mistake of law is no defense is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991); *see also United States v. Hinckley,* 550 F.3d 926, 938 (10th Cir. 2008) (presuming that a defendant is aware of the law, the court rejected defendant's argument that he lacked fair notice that SORNA imposed greater penalties than state law), *abrogated on other grounds by Reynolds v. Unites States*, 565 U.S. 432 (2012). Indeed, "[f]ew offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so." *United States v. Clements*, No. CR-08-303-TUC-DCB, 2008 WL 11350048, at *7 (D. Ariz. July 10, 2008) (internal quotation marks and citation omitted), *rev'd on other grounds*, 655 F.3d 1028 (9th Cir. 2011). Here, the evidence showed that Lyte was fully aware of his ongoing duty to register as a sex offender. His "knowledge of state law registration requirements was enough to put him on inquiry notice of the corresponding federal law. Due process requires no more." *United States v. Crum*, No. CR08-255RSL, 2008 WL 4542408, at *4 (W.D. Wash. Oct. 8, 2008).

28. Lyte argues that he was in an impossible position. He was compliant with the State laws of Michigan, and he attempted to comply with Arizona registration requirements on June 8, yet ended up running afoul of the 3-day provision under SORNA. Lyte argues that the law is not sufficiently clear to say that Lyte was on notice that he violated SORNA's 3-day provision.

29. Lyte's argument is without merit. First, his underlying premise—that he was compliant with Michigan registration law—is untrue. Lyte had never registered his place of residence in Michigan and had never registered his travel to other states. Second, there was no impossible conflict in state law requirements and SORNA'S 3-day registration requirement. Michigan also had a 3-day reporting requirement for change of residence, of

which Lyte was aware, but nonetheless failed to complete.  SORNA's requirement was no more burdensome.  Similarly, SORNA's 3-day notice requirement was not more onerous that North Carolina's registration requirements.  Pursuant to N.C.G.S. § 14-208.8A, a sex offender must provide notice within 72 hours after an offender knows or should know that he will be working and maintaining a temporary residence in a county other than the county in which the offender resides for more than 10 business days within a 30-day period.  The statute requires the offender to notify the sheriff of the offender's place of employment and temporary residence, which includes a hotel, motel, or other transient lodging place.  N.C.G.S. § 14-208.8A.  Lyte also failed to comply with North Carolina's 72-hour notice requirement.  Third, the evidence demonstrated that Lyte was deliberately avoiding complying with any registration requirements.  He did not update any of his registrations or make new registrations, despite knowing that he was required to do so.

**10th Amendment Claim**

30.  Lyte contends that SORNA unlawfully forces states and state officials to continually update sex offender registries to comply with SORNA's registration requirements, unduly burdening the states in violation of the Tenth Amendment.

31.  Lyte offered no evidence in support of this argument, and binding precedent precludes it.  In *United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014), the Ninth Circuit "join[ed] every other court of appeals that has considered the question in holding that SORNA does not violate the Tenth Amendment's anti-commandeering principle and adopt[ed] the other circuits' reasoning for doing so."  As the *Richardson* court explained, "SORNA does not compel states or state officials to comply with its requirements; rather, Congress engaged in a constitutionally valid exercise of its spending power by conditioning the receipt of certain federal funds on the implementation of SORNA."  *Richardson*, 754 F.3d at 1146 (citations omitted). Under SORNA "'[a] state is free to keep its existing sex-offender registry in place (and risk losing funding) or adhere to SORNA's requirements (and maintain funding).'" *Id*. (quoting *United States v. Felts*, 674 F.3d 599, 606-08 (6th Cir. 2012)).

**Right to Travel**

32. Lyte claims that SORNA unconstitutionally burdens his right to travel, although Lyte does not develop this argument or cite legal authority in support.

33. Numerous Courts have considered this argument and rejected it. *See Willman v. Att'y Gen. of the U.S.*, 972 F.3d 819, 826 (6th Cir. 2020) (SORNA's "registration obligations do not burden a sex offender's movement in a way that violates a person's right to travel."); *United States v. Byrd,* 419 F. App'x 485, 491 (5th Cir. 2011) ("SORNA's registration requirements do not implicate the fundamental right to travel of convicted sex offenders because nothing in the statute precludes an offender from 'enter[ing] or leav[ing] another state,' being 'treated as a welcome visitor . . . in the second State,' or being 'treated like other citizens of that State' if the offender chooses to permanently relocate." (quoting *Saenz v. Roe*, 526 U.S. 489, 500 (1999)); *United States v. Shenandoah,* 595 F.3d 151, 162 (3d Cir. 2010) ("There is simply no Constitutional violation. Moreover, moving from one jurisdiction to another entails many registration requirements required by law which may cause some inconvenience, but which do not unduly infringe upon anyone's right to travel."), *abrogated on other grounds by Reynolds v. United States*, 565 U.S. 432 (2012); *United States v. Ambert,* 561 F.3d 1202, 1210 (11th Cir. 2009) ("The requirement to update a registration under SORNA is undoubtedly burdensome; however, the government's interest in protecting others from future sexual offenses and preventing sex offenders from subverting the purpose of the statute is sufficiently weighty to overcome the burden. This statute does not violate Ambert's right to travel."); *United States v. Benevento*, 633 F.Supp.2d 1170, 1186 (D. Nev. 2009) (agreeing "with those courts which have found that the federal government has a compelling interest in preventing sex offenses by keeping track of the whereabouts of sex offenders. At a minimum, SORNA is rationally related to a legitimate government interest in tracking sex offenders as they move in interstate commerce so that they do not subvert state registration requirements by traveling to other jurisdictions without notifying local law enforcement."); *Crum* 2008 WL 4542408, at *7 ("SORNA does not prohibit sex offenders from traveling from one state to another, it

merely requires them to register when they do so.").

34. The Court agrees that SORNA's information requirements are not so burdensome as to violate Lyte's right to travel. SORNA's requirements, while perhaps inconvenient, do not prohibit travel. Even if SORNA was deemed to implicate the fundamental right to travel, "the government's interest in protecting others from future sexual offenses and preventing sex offenders from subverting the purpose of the statute is sufficiently weighty to overcome the burden." *Ambert*, 561 F.3d at 1210; *see also Benevento,* 633 F.Supp.2d at 1186.

35. Because the Government proved all of the elements of the offense beyond a reasonable doubt, the Court finds Lyte guilty of the crime of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a).

**V.     Order**

Pursuant to the Court's finding that Lyte is guilty of the crime charged,

IT IS ORDERED that a Presentence Investigation Report be prepared. Sentencing in this matter is set for October 19, 2021 at 3:30 p.m. in Courtroom 5A, 405 West Congress Street, Tucson, AZ 85701.

Dated this 10th day of August, 2021.

Honorable Jennifer G. Zipps
United States District Judge

cc:     U.S. Probation